**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHIRLEY ELLIOTT<br>3405 Brownsville Road<br>Trevose, PA 19053 | : <br> : <br> : <br> : | CIVIL ACTION |
|        Plaintiff,<br>   v. | :<br>: | CASE NO.: |
| LCB PERSONNEL, LLC<br>315 Norwood Park South, Suite 205<br>Norwood, MA 02062<br>    and<br>LCB SENIOR LIVING, LLC<br>315 Norwood Park South, Suite 205<br>Norwood, MA 02062 | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |
|      Defendants. | :<br>: | |

**CIVIL ACTION COMPLAINT**

Shirley Elliott (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      This action has been initiated by Plaintiff against LCB Personnel, LLC and LCB Senior Living, LLC (hereinafter referred to as "Defendants") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 *et. seq.*), the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 et seq.), and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff asserts, *inter alia*, that she experienced unlawful workplace discrimination and retaliation, culminating in her termination from Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.    Plaintiff resides in and is a citizen of Pennsylvania.

3.    Upon information and belief, LCB Personnel, LLC and LCB Senior Living, LLC are incorporated under the laws of Delaware with headquarters and/or principal place of business in Massachusetts, rendering them citizens of Delaware and Massachusetts.

4.    This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania, and Defendants are citizens of Delaware and Massachusetts, and the amount in controversy exceeds $75,000.

5.    This Court also has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under the ADA, FMLA, and the ADEA.  There lies supplemental and/or ancillary jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

6.    This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the *United States Supreme Court in International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

7.    Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

8. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC").

9. Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

10. Plaintiff has properly exhausted her administrative remedies regarding her PHRA claims by dual-filing her Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and by waiting at least one year since the filing before asserting her PHRA and PFPO claims.

**PARTIES**

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff is an adult individual, with an address as set forth in the above caption.

13. LCB Personnel, LLC (hereinafter individually referred to as "Defendant LP"), a wholly owned subsidiary of LCB Senior Living, LLC, is a major developer and operator of senior housing communities across the Northeastern United States, with headquarters at the above-captioned address.

14. LCB Senior Living, LLC (hereinafter individually referred to as "Defendant LS") is an operator and developer of independent living, assisted living, and memory care communities across the Northeastern and Mid-Atlantic United States, with headquarters at the above-captioned address. Plaintiff worked at one such senior living community in Doylestown, Pennsylvania.

3

15.    Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they made be treated as a single and/or joint employer for purposes of the instant action.

16.    At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

17.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

18.    Plaintiff was originally employed as a Resident Care Director for Merrill Family of Senior Living Communities (hereinafter "Merrill Family") at the Mercer Hill at Doylestown (hereinafter "Mercer Hill") senior living community located at 2010 S. Easton Road, Doylestown, PA 18901.

19.    In or about July of 2024, Defendants began the process of taking over the management of Mercer Hill from the Merrill Family, and Defendants' management made the decision to hire/retain Plaintiff as an Assistant Resident Care Director working directly for Defendants.

20.    Plaintiff was thereafter promoted to Resident Care Director in or about November of 2024, after receiving a stellar 5-star evaluation.

21.    During her employment with Defendants, Plaintiff was primarily supervised by Executive Director, Deb Bodnar (hereinafter "Bodnar") and generally by Regional Director of

Care, Tanya Jordan (hereinafter "Jordan") and Regional Director of Operations, Brittney Jones (hereinafter "Jones").

22.    Throughout her employment with Defendants, Plaintiff was a hard-working employee who performed her job well.

23.    Plaintiff is a 60-year-old woman with serious health conditions, who was suspended and eventually pretextually terminated (discussed in more detail *infra*) on or about February 12, 2025, as a result of the same, as well as her requests for reasonable medical accommodations.

24.    Plaintiff has and continues to suffer from several ADA-qualifying disabilities, including but not limited to hearing difficulties, post traumatic stress disorder ("PTSD"), depression, an anxiety disorder (including panic attacks), and associated conditions/complications.

25.    As a result of her aforementioned health conditions, Plaintiff suffered from sleeplessness, feelings of hopelessness, panic, and hearing loss; which (at times) limited her ability to perform some daily life activities, such as hearing, sleeping, focusing, and working (among other daily life activities).

26.    Despite her aforementioned heath conditions and limitations, Plaintiff was able to perform her job duties well; however, she (at times) required some reasonable medical accommodations.

27.    At all relevant times hereto, Defendants' management, including but not limited to Jordan and Human Resources ("HR") Director, Shaline Jaglal (hereinafter "Jaglal"), were aware of Plaintiff's aforesaid health conditions and need for reasonable accommodations.

28.     For example, upon Defendants' acquiring their predecessor in or about 2024, Plaintiff specifically advised Jaglal that she suffered from hearing issues as well as PTSD, for which she attended weekly trauma therapy sessions and may need time off for the same as well as other treatment.

29.     However, Defendants' management, including but not limited to Jordan, exhibited extreme frustration with Plaintiff's health conditions and need for reasonable accommodations, often berating her for the same.

30.     Jordan had assumed her role in the late summer/early fall as Plaintiff's indirect management.

31.     Jordan had transitioned from the role of Nurse Specialist to Regional Director of Care, and Plaintiff estimates having at least three (3) conversations with Jordan about her disabilities between July – December of 2024, that Plaintiff had initiated for several reasons.

32.     Specifically, Jordan had commented insensitively to Plaintiff, that Plaintiff talked very loudly at times, so Plaintiff explained some specifics of her health history to Jordan, including that Plaintiff has serious hearing problems for many medical reasons, which causes her occasionally to talk loudly.

33.     Plaintiff also shared with Jordan that she may need to take a brief break or get some fresh air (as needed – a reasonable accommodation under the ADA) if she feels a panic attack or flareup of her anxiety coming on, as Plaintiff had past trauma

34.     Plaintiff further advised Jordan of her trauma therapy sessions and that she needed to leave work either just a few minutes early or exactly at the end of her scheduled just one day per week.

35.     Instead of properly accommodating Plaintiff's very reasonable aforesaid requests for medical accommodations, however, in or about the September to December of 2024 timeframe, Jordan would repeatedly ask Plaintiff, "Are you OK?" – not with genuine concern but often in close proximity to an upcoming medical appointment of Plaintiff's, clearly perceiving Plaintiff as being too disabled to perform her job duties.

36.     Then by December of 2024, **only after Plaintiff had notified Jordan of the nature of her health conditions and requested accommodations**, Jordan informed Plaintiff that she was giving her a warning (via a phone discussion).

37.     Despite that Plaintiff had just received a very good evaluation (from different management) and had recently been promoted, Jordan felt the need to issue a warning to Plaintiff via phone, even though Plaintiff had helped with business metrics and Defendants were doing excellent by way of overall census.

38.     Jordan, however, criticized Plaintiff for a non-issue with a patient's family as well as retaliatorily admonishing her for having a flareup of her aforesaid health conditions.

39.     With regard to the aforementioned non-issue with a patient's family, Plaintiff simply contacted the family and expressly advocated that the particular patient should be considered for skilled nursing due to her complex health problems (as opposed to more limited services in which they could provide).

40.     Not only does Plaintiff have a duty to consider a patient's health and safety above all else by state regulations, but it is an essential function of her position to do the same.

41.     As to the flareup of her aforesaid health conditions, Plaintiff had been in the conference room (a closed space) with two other people, one of whom was talking quite loudly, and she suffered a panic attack, had a hard time breathing, and needed to exit the room.

42.     Not only had Plaintiff done nothing wrong by suffering the aforesaid flareup of her health conditions, but she had expressly advised Jordan some months prior that she may need to take breaks as needed for fresh air when experiencing a panic attack – which was an easily grantable and minor accommodation request.

43.     Nonetheless, Jordan failed to properly accommodate Plaintiff's health conditions by admonishing Plaintiff for utilizing the very reasonable medical accommodations she had requested early in her employment with Defendants.

44.     Defendants' management, including but not limited to Jordan, also failed to allow Plaintiff to leave either slightly early or exactly at the end of her scheduled shift time once a week for her therapy sessions throughout the majority of her employment with Defendants, to the point where Plaintiff had to give up her therapy sessions as she could not make them on time.

45.     Despite that Plaintiff had informed Defendants that she required breaks as needed for panic attacks or to step away and the ability to leave 15 minutes early and/or on time one day a week for therapy sessions, Defendants' management never informed Plaintiff of her individualized FMLA rights, as required by the FMLA.  Nor did Defendants ever designate such break and/or leave time (if she was ever permitted to take it) as FMLA-qualifying leave.

46.     Therefore, Defendants failed to follow proper notice, designation, and informational regulations of the FMLA, despite the fact that she was legally entitled to take FMLA leave for her own health conditions as her prior tenure with her predecessor employer counted towards her FMLA entitlement by law.[1]

---

[1] Under the FMLA, the term "employer" encompasses "any successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(II).  If a defendant is a successor to another employer under this subsection then the plaintiff's entitlement to FMLA leave would have been the same as if his employment by the two employers was "continuous employment by a single employer."  29 C.F.R. § 825.107(c). The "determination of whether or not a 'successor in interest' exists is not determined by the application of any single criterion, but rather the circumstances are to be viewed in their totality." *Id.* at § 825.107(b).  Courts examine these criteria from a plaintiff's viewpoint "at or near

47. Then, in or about the second week of February of 2025, Bodnar, another older 60-year-old employee, was abruptly terminated for completely pretextual reasons. Following her termination, Bodnar's role was then functionally performed by Joseph Horwitz (age 40s, hereinafter "Horwitz").

48. Shortly thereafter, on or about February 12, 2025, Plaintiff was suspended and abruptly terminated for completely pretextual reasons.

49. Specifically, it was known by numerous managers that an employee Resident Care Aide, Melissa Jean (age 30s, hereinafter "Jean") was stealing time, as Jean's punch-clock times did not match her actual work time (and she was manipulating her time via her cell phone).

50. Management had surveilled Jean and determined she was clearly stealing time (and committing payroll fraud). As a result, Plaintiff, as part of her required job duties for her role, issued Jean written discipline and a suspension.

51. On or about February 3, 2025, Plaintiff was then abruptly suspended by Horowitz purportedly for disciplining Jean in contravention of company policy, even though Plaintiff was in management, and the discipline of Jean was clearly justified.

52. Plaintiff was then required to remain out of work, pending investigation, until her termination on or about February 12, 2025.

---

the time of the change in employer," and ask "whether an employee who has been retained will understandably view his or her job situation as essentially unaltered." *Vanderhoof v. Life Extension Inst.,* 988 F. Supp. 507, 513 n.2 (D.N.J. 1997). Courts in this jurisdiction have found continuity when, as is the case here, a subsequent employer took over the former company's equipment, inventory, business contracts, records, and clients, there was no break in company operations, and the new employer continued to provide the same types of services to clients. *See Lombardo v. Air Prods. & Chems., Inc.*, 2006 U.S. Dist. LEXIS 46077, *12-14 (E.D. Pa. July 7, 2006).

53. Horowitz's removal of Plaintiff (via suspension) could not possibly be for a falser or more pretextual rationale, as Plaintiff had discussed the aforesaid time theft by Jean with Jordan (her manager and Defendants' Regional Care Director).

54. In fact, Jordan expressly advised Plaintiff as to the exact manner in which to discipline Jean, and Plaintiff followed her directive exactly as given.

55. By way of more clarity, Jordan, in the presence of witnesses – Lauren Tritschler (hereinafter "Tritschler") and Lynn Lightner (hereinafter "Lightner") – said Jean "must be suspended today," and tapped her watch (indicating right now), while stating that Plaintiff was not to let Jean leave without suspending her.

56. Jordan then made Lightner retrieve Jean for her suspension.

57. Plaintiff also had a witness present (Lightner) to inform Jaglal of Jean's discipline.

58. Plaintiff followed this aforesaid mandate from management and did exactly what she was directed to do. However, when Plaintiff protested her suspension advising Horowitz of the same, he simply advised Plaintiff, "I don't care."

59. Tellingly, following her termination, Plaintiff's role was functionally filled by someone (Shawnette Bernard – age 40s, hereinafter "Bernard") who was substantially younger than Plaintiff and whom Plaintiff had been training leading up to her suspension and termination.

60. While Plaintiff was originally informed that Bernard would be assigned to the Dementia Unit, Plaintiff came to learn that she had in essence trained Bernard for Plaintiff's own role once Plaintiff was pretextually terminated.

61. Plaintiff then received termination correspondence entirely changing the purported grounds for her termination.

62.     Specifically, while Defendants' original alleged verbal reason for Plaintiff's termination was the improper discipline of Jean, Defendants now informed Plaintiff via written documentation, for the first time, that supposedly her tone, unprofessional demeanor, or negative relationship with certain other employees (wherein she was supposedly causing tension) was the actual reason for her termination.

63.     Defendants shifting/conflicting reasons for Plaintiff's termination is clear evidence of pretext.[2]

64.     Moreover, patients or patients' families complained about other non-disabled and/or younger employees all the time, but those employees were not disciplined or terminated.

65.     Because Plaintiff was considered exceptional in her dealings with patients and families, it was not only shocking to receive some type of "warning" for a single alleged complaint by a patient's family but unbelievable to then be purportedly terminated in part for the same. Especially, when Plaintiff's functional replacement, Bernard, had received many complaints from patients or families but was not disciplined or terminated for the same.

66.     Prior to her termination, Defendants' management failed to properly accommodate her health conditions by refusing to allow her to take ADA and/or FMLA-qualifying leave for breaks as needed or to leave early for therapy sessions.

67.     Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of: (1) her advanced age; (2) her

---

[2] *See, e.g.*, *Zelinski v. Pennsylvania State Police,* 108 Fed. Appx. 700, 707 (3d Cir.2004) (emphasis added); *see also Bourara v. N.Y. Hotel Trades Council & Hotel Ass'n of N.Y. City, Inc., Emple. Ben. Funds*, No. 20-3092, 2021 U.S. App. LEXIS 31269, at *4 (2d Cir. Oct. 19, 2021) (citing *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013)) (same); *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 55 (3d Cir.1990)(emphasis added) (holding plaintiff can demonstrate pretext by showing that a "defendant's proffered reason is 'merely fabricated justification for discriminatory conduct ⋯"either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is ***unworthy of credence***'").

actual/perceived/record of disabilities; (3) her requested medical accommodations (set forth *supra*); and (4) Defendants' failure to properly accommodate Plaintiff's disabilities (set forth *supra*).

68.    Plaintiff also believes and therefore avers that her advanced age and serious medical conditions were motivating and/or determinative factors in the termination of her employment by Defendants.

**COUNT I**
**<u>Violations of the Americans with Disabilities Act, as Amended ("ADA")</u>**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Hostile Work Environment;**
**[3] Retaliation; and [4] Failure to Accommodate)**
**-Against Both Defendants-**

69.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70.    Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

71.    Plaintiff kept Defendants' management informed of her serious medical conditions and need for medical treatment and other accommodations.

72.    Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require some reasonable medical accommodations at times.

73.    Plaintiff requested reasonable accommodations from Defendants including but not limited to brief breaks as needed for flareups of her aforesaid mental health conditions and intermittent time off as needed for therapy sessions and to care for and treat her aforesaid health conditions.

74. Plaintiff was terminated from her employment with Defendants on or about February 12, 2025, for completely pretextual reasons.

75. Prior to her termination, Defendants' management failed to properly accommodate her health conditions by refusing to allow her to take ADA and/or FMLA-qualifying leave for breaks as needed or to leave early for therapy sessions.

76. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of: (1) her actual/perceived/record of disabilities; (2) her requested medical accommodations (set forth *supra*); and (3) Defendants' failure to properly accommodate Plaintiff's disabilities (set forth *supra*).

77. Plaintiff also believes and therefore avers that her disabilities were motivating and/or determinative factors in the termination of her employment by Defendants.

78. These actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Hostile Work Environment;**
**[3] Retaliation; and [4] Failure to Accommodate)**
**-Against Both Defendants-**

79. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

80. Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

81. The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims set forth in Count I.

## COUNT III
## Violations of the Family and Medical Leave Act ("FMLA")
### ([1] Retaliation & [2]Interference)
### -Against Both Defendants-

82.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

83.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

84.     Plaintiff requested leave for medical reasons from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

85.     Plaintiff had at least 1,250 hours of service with Defendants during her last full year of employment.

86.     Defendants are engaged in an industry affecting commerce and employed at least fifty (50) or more employees within 75 miles of the location where Plaintiff worked for Defendants for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

87.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

88.     Plaintiff requested FMLA-qualifying leave to care for and treat her aforesaid health conditions just prior to her termination.

89.     Defendants committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) failing to inform Plaintiff of her individualized FMLA rights, which constitutes

14

a failure to follow proper notice, designation, and information regulations of the FMLA; (4) terminating Plaintiff to intimidate her and/or prevent her from taking FMLA-qualifying leave in the future; (5) making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA; and (6) failing to designate the break and/or leave time (if she was ever permitted to take it) that Plaintiff requested throughout her employment with Defendants as FMLA-qualifying leave.

90. These actions as aforesaid constitute violations of the FMLA.

## COUNT IV
## Violation of the Age Discrimination in Employment Act ("ADEA")
### ([1] Age Discrimination & [2] Hostile Work Environment)
### -Against Both Defendants-

91. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

92. Plaintiff was treated hostilely and disparately with respect to work, discipline, policies, and termination contrary to individuals substantially younger than her.

93. Plaintiff was abruptly terminated on or about February 12, 2025, for completely pretextual reasons.

94. Plaintiff believes and therefore avers that she was subjected to discrimination, hostile work environment, and disparate treatment because of her advanced age.

95. Following her termination, Plaintiff's job duties were performed by substantially younger, less tenured, and experienced individuals that were retained over her.

96. Plaintiff believes and therefore also avers that her advanced age was a motivating and/or determinative factor in the termination of her employment by Defendants.

97. These actions as aforesaid constitute unlawful age discrimination under the ADEA.

15

**COUNT V**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Age Discrimination & [2] Hostile Work Environment)**
**-Against Both Defendants-**

98.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

99.     Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

100.     The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims as set forth in Count IV.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority;

C.     Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

16

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: July 20, 2026

17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Shirley Elliott | : | CIVIL ACTION |
| v. | : | |
| LCB Personnel, LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.    (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| 7/20/2026 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?   Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ELLIOTT, SHIRLEY

## DEFENDANTS

LCB PERSONNEL, LLC, ET AL.

**(b)** County of Residence of First Listed Plaintiff **Bucks**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Norfolk**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability  ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Pharmaceutical Slander  Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability  ☐ 368 Asbestos Personal  ☐ 340 Marine  Injury Product  ☐ 345 Marine Product  Liability | | ☐ 835 Patent – Abbreviated New Drug Application  ☐ 840 Trademark | ☐ 460 Deportation  ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability  **PERSONAL PROPERTY**  ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | Product Liability  ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal  Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury  ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | Exchange |
| | ☐ 362 Personal Injury -  Product Liability  Medical Malpractice | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g))  ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions  ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment  ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/  Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | Accommodations  ☐ 530 General | | 26 USC 7609 | Agency Decision |
| ☐ 290 All Other Real Property | ☒ 445 Amer. w/Disabilities -  ☐ 535 Death Penalty  mployment  **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 446 Amer. w/Disabilities -  ☐ 540 Mandamus & Other  Other  ☐ 550 Civil Rights | ☐ 462 Naturalization Application  ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education  ☐ 555 Prison Condition  ☐ 560 Civil Detainee -  Conditions of  Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601); ADEA (29USC621)

Brief description of cause:
Violations of the ADA, FMLA, ADEA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE 7/20/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____